**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 8, 2011

Lyle W. Cayce
Clerk

No. 10-20587

Almeda Mall, L.P.

Plaintiff-Appellee

v.

Shoe Show, Inc., doing business as The Shoe Department, Inc.;
The Shoe Show of Rocky Mount, Inc., doing business as Shoe Department,

Defendants-Appellants

Appeal from the United States District Court for
the Southern District of Texas

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

Wiener, Circuit Judge.

Defendant-Appellant Shoe Show, Inc. ("Shoe Show") entered into a lease (the "Lease") as lessee ("Lessee") of a store space (the "Leased Premises") in a shopping mall in Houston, Texas. The Lessor was San Mall, the predecessor in interest of Plaintiff-Appellee Almeda Mall, L.P. ("Almeda"). In the Lease, Shoe Show agreed to operate a retail shoe store in the Leased Premises under the trade name "The SHOE DEPT."[1] The Lease expressly prohibited Shoe Show

---

[1] The Lease refers to the trade name to be used by Lessee as "The SHOE DEPT."; the record photo of the sign on the Leased Premises reflects "the SHOE DEPT." as does Appellee's brief; the Appellants' brief refers to "THE SHOE DEPT." We have chosen to go with the Lease and use "The SHOE DEPT." throughout this opinion.

No. 10-20587

from operating another business under the name "The SHOE DEPT." or any "substantially similar trade-name," within two miles of the Leased Premises. Shoe Show subsequently opened a retail footwear store under the name "SHOE SHOW" in a commercial center located less than a quarter mile from the mall in which the Leased Premises is located. Neither San Mall nor Almeda objected until, some time later, Shoe Show exercised its option to terminate the Lease early, which option was conditioned on Shoe Show's not being in default under the Lease. Only then did Almeda, as the current owner of the mall in which the Leased Premises is located, sue Shoe Show. Almeda contended that its operation of that second store violated the terms of the Lease because the name of the second store was "substantially similar" to the name of the store in the Leased Premises, thereby making Shoe Show ineligible to terminate the Lease early. Holding that the two trade names were indeed substantially similar, the district court granted Almeda's motion for summary judgment. As we conclude that, under the uncontested facts of this case and the discrete provisions of the Lease, the trade name SHOE SHOW is not substantially similar to The SHOE DEPT., we reverse that court's summary judgment and remand for further proceedings consistent herewith.

## I.  FACTS & PROCEEDINGS

### A.  *Facts*

Shoe Show entered into the Lease with San Mall for the stated purpose of operating a retail shoe store in the Almeda mall which was then owned and operated by San Mall. The Lease was for a term of ten years, but gave Shoe Show the option of terminating the Lease after five years if the Lessee's annual sales in the Leased Premises did not exceed one million dollars by the end of the fifth year of the lease term. This option was conditioned, however, on Shoe

Show's not being in default under the Lease when it mailed the termination notice.

Section 4.01(c) of the Lease states that Shoe Show "shall operate its business . . . under the following trade-name only and under no other trade-name: The SHOE DEPT." Section 4.08 of the Lease ("the trade name provision") states:

> Tenant agrees that so long as this Lease shall remain in effect, Tenant . . . shall not, either directly or indirectly, own, operate or be financially interested in . . . a business operating under the same or substantially similar trade-name, as permitted by Section 4.01(c) of this Lease, within a radius of two (2) miles of the perimeter of the [mall].

Section 4.08 of the Lease also provides that if Shoe Show should violate the trade name provision, the Lessor could include all gross sales from the other proximate business when calculating Shoe Show's rent for the Leased Premises.

Pursuant to the Lease, Shoe Show opened a retail shoe store in the Leased Premises under the name The SHOE DEPT. Approximately four years later, Shoe Show opened another retail shoe store, using the trade name SHOE SHOW, in a commercial center located approximately 400 feet from the perimeter of the shopping mall in which the Leased Premises is located. A few months after that, San Mall sold that shopping mall to Almeda and assigned all of the leases of space therein to Almeda. Neither San Mall nor Almeda registered any concern or took any action against Shoe Show for using SHOE SHOW as the name of its new store in the nearby center, however, until the spring of the year following Almeda's acquisition of the mall – and then only after Shoe Show had notified Almeda that it intended to exercise its early-termination option. In that notice, Shoe Show advised Almeda that annual sales at The SHOE DEPT. had failed to reach the million-dollar level by the end of the fifth lease year of the Lease.

No. 10-20587

Almeda rejected Shoe Show's early termination of the Lease, contending for the first time that Shoe Show's operation of SHOE SHOW in such close proximity to the Leased Premises violated the trade name provision of the Lease, thereby constituting a default and making Shoe Show ineligible to exercise its early-termination option. Shoe Show disagreed, vacated the Leased Premises, and ceased paying rent under the Lease. Two months later, Almeda sued Shoe Show for breach of the Lease.

*B. Proceedings*

The parties filed opposing motions for summary judgment. Almeda took the position that Shoe Show's operation of a retail store under the name SHOE SHOW in the nearby commercial center violated the trade name provision of the Lease, putting Shoe Show in default and rendering it ineligible to exercise its right to terminate the Lease early. Almeda sought past due rent, future damages, and attorneys fees. Shoe Show countered that it had not violated the trade name provision of the Lease because the name SHOE SHOW is neither expressly prohibited in the Lease nor substantially similar to The SHOE DEPT. as a matter of law.

The district court agreed with Almeda that the two stores had substantially similar trade names and granted Almeda's motion for summary judgment, awarding it damages and attorneys fees. Shoe Show timely filed a notice of appeal.

No. 10-20587

## II. STANDARD OF REVIEW

We review a district court's summary judgment de novo.[2]  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]  When reviewing a summary judgment, we construe all the evidence and reasonable inferences in the light most favorable to the nonmoving party.[4]

## III. ANALYSIS

The parties agree that, pursuant to the choice-of-law provision of the Lease, Ohio law governs the interpretation of that contract.  We conduct our review of the instant summary judgment in two steps.  We first determine the meaning of the phrase "substantially similar trade-name" as it is used in the Lease.  We then determine whether, in that context, the trade names SHOE SHOW and The SHOE DEPT. are substantially similar.

We agree with the district court that, as used in the Lease, the phrase "substantially similar trade-name" is not ambiguous.  A term is not ambiguous when it can be given a definite legal meaning.[5]  The district court drew on the

---

[2] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 233 (5th Cir. 2010) (citing *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008)).

[3] FED. R. CIV. P. 56(a).

[4] *Amazing Spaces*, 608 F.3d at 234 (citing *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009)).

[5] *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003) (citing *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000)).

Ohio Labor and Industry Code[6] as well as BLACK'S LAW DICTIONARY[7] in determining that a trade name is "the name that identifies a business." The court then credited RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY'S[8] definition of "substantially similar" as having "essential elements in common." The district court surmised (and we agree) that the subject phrase, as used in the trade name provision of the Lease, prohibits Shoe Show from opening and operating any business withing two miles of the Leased Premises under a name that "identifies a business" and has essential elements in common with "The SHOE DEPT." For purposes of such identification, "business" refers to the party conducting the operation, not to the nature of the operation that it conducts.

Of equal importance to our inquiry as what the trade name provision of the Lease specifies is what it *does not* specify.[9] As reflected in the record and confirmed by counsel at oral argument, the parties who negotiated the Lease were sophisticated individuals with considerable experience operating and leasing shopping malls and commercial centers on the one hand, and renting and operating retail footwear stores in such locations on the other hand. More to the point, the party who negotiated the lease for the Lessor was aware that Shoe Store is a national footwear retailer with some 1,100 outlets, almost all of which are operated under one of but three trade names: SHOE SHOW, The SHOE DEPT., or BURLINGTON SHOES. Within that framework we note:

---

[6] OHIO REV. CODE ANN. § 4165.01.

[7] (8th ed. 2004).

[8] (2d ed. 1999).

[9] We remain mindful that this is *not* a trademark, patent, or copyright case and does not involve infringement or appropriation of such a right by a stranger against the holder of the right. Rather, this trade name case implicates precisely the opposite, *viz.*, the express contractual effort to limit the use of a trade name by its rightful holder.

No. 10-20587

- The trade name provision of the Lease does *not* expressly prohibit Shoe Store from operating a *retail shoe store* within a two-mile radius of the Leased Premises.

- Neither does the trade name provision expressly prohibit Shoe Show from using the word "shoe" in the trade-name of any operation that it might conduct within a two-mile radius of the Leased Premises.

- Although the trade name provision expressly prohibits Shoe Store from using the name The SHOE DEPT. for any store that it might operate within two miles of the Leased Premises, that provision never mentions, much less expressly prohibits, Shoe Show's use of either of its other two widely used trade names, SHOE SHOW or BURLINGTON SHOES.

- Instead of forthrightly prohibiting Shoe Show from using those other two widely used trade names, the trade name provision employs only the non-specific, elastic term "substantially similar" in reference to The SHOE DEPT. to identify the set of other trade names that Shoe Show may not use within two miles of the Leased Premises.

- Although the trade name provision prohibits Shoe Show from using a trade name that is "substantially similar" to The SHOE DEPT., it does not proscribe the use of "*misleadingly* similar" or "confusing" trade names or other such restrictive labels that are commonly employed in patent, copyright, and trademark law.

In failing expressly to prohibit the use of SHOE SHOW or BURLINGTON SHOES, and instead employing (or, more likely, reluctantly accepting) the non-specific phrase "substantially similar trade-names," San Mall, as the original lessor of the Leased Premises, apparently attempted to do indirectly that which it did not (and likely could not) do directly, i.e., make Shoe Show as Lessee

7

expressly commit not to use its other two widely used trade names, SHOE SHOW and BURLINGTON SHOES, in close proximity to the Leased Premises. Then, after the Lease was signed and the Leased Premises occupied, San Mall, and, subsequently, Almeda, remained silent the whole time that Shoe Show was opening and operating its new store under the name SHOE SHOW less than a quarter of a mile from Lessor's mall — *until*, that is, Shoe Show gave notice that it was terminating the Lease. Only then did Almeda, as successor Lessor, attempt to shoehorn the name "SHOE SHOW" into the non-specific prohibition contained in the trade name provision, "substantially similar."

We are chary to reward Almeda's attempt to do indirectly that which its Lease fails to do directly. Contrary to the assertions of Almeda and the conclusions of the district court, we are satisfied that, when examined in the context of the entire Lease and the history of the confection, "The SHOE DEPT." and "SHOE SHOW" are not substantially similar trade names within the intendment of the Lease's trade name provision. Consequently, we conclude that Shoe Show did not violate that provision of the Lease when it opened and operated the second store under the name SHOE SHOW within a two mile radius of the first. Here is why.

In *Cleveland Opera Co. v. Cleveland Civic Opera Association*, a case heavily relied on by the district court, an appellate court in Ohio employed a two-step analysis to determine whether the names of two rival organizations were substantially similar.[10] The Ohio court's first step was to eliminate consideration of geographical *and descriptive* terms, stating that "we think there is no authority that warrands [sic] the barring of words geographical and descriptive, unless in connection with other words they are precisely similar, or

---

[10] 154 N.E. 352, 353 (Ohio Ct. App. 1926).

No. 10-20587

so substantially similar, that, in the face of proof, *deception and confusion* would arise, and therefore *unfair competition.*"[11]

We see that pronouncement as precisely applicable to the word "shoe" in this case. As used in the trade names of both The SHOE DEPT. and SHOE SHOW, the word "shoe" is descriptive only. It generically identifies the nature of the operation being conducted, *not* the particular business entity that is conducting it. Therefore, in neither of these names does "shoe" contribute to the determination whether the two trade names are "substantially similar." Indeed, it is completely neutral and is neither deceptive nor confusing.

Another reason that "shoe" cannot be a determinative element here is because the trade name provision of the Lease does not forbid Shoe Show from conducting a footwear operation within the proscribed proximity of the Leased Premises. We take judicial notice of the fact that the vast majority of retail footwear stores throughout this country include the word "shoe" in their titles and do so for the single purpose of identifying the type of merchandise offered in that store, and not for the purpose of identifying the business – the person, company, corporation, or chain – that is making those goods available.

Almeda, like San Mall before it, has to have known that — absent an express prohibition in the Lease of the use of SHOE SHOW or BURLINGTON SHOES — any facility opened and operated by Shoe Show within (or, for that matter, beyond) two miles of the Leased Premises would almost certainly employ one of those trade names, each of which includes the generic or descriptive term "shoe." We must reject out of hand any consideration of the word "shoe" as a factor in determining whether "SHOE SHOW" is substantially similar to "The SHOE DEPT."

---

[11] *Id.* (emphasis added).

No. 10-20587

The second step under the *Cleveland Opera Co.* analysis is to determine whether "the other words constituting the name . . . result in apparent or obvious confusion, or by inference tend in that direction to such extent that there is a probability that by reason of confusion unfair competition may be the result . . . ."[12] DEPT. (silently read by all who see it as "department") and SHOW have very different meanings; they are not each other's synonyms. This is confirmed by comparing many of the synonyms for those two words that are listed in ROGET'S THESAURUS. A sampling of the synonyms found in ROGET'S for "department" includes administration, agency, area, bureau, division, office, quarter, station, subdivision, unit, assignment, classification, subdivision, territory, classification, specialty, and sphere.[13] Compare those with some of ROGET'S synonyms for "show," e.g., demonstration, exhibition, appearance, display, expo, fair, parade, presentation, and production.[14] It becomes readily apparent that there is no overlap in the synonyms for shoe and those for department, making it highly unlikely that a potential customer would be confused or misled as to what business entities, i.e., *who*, is offering shoes in the subject stores based on any similarity in "SHOW" and "DEPT." And, Almeda does not contend that a shopper would be likely to know that the same entity owns and runs both "The SHOW DEPT." and "SHOE SHOW." If, instead of *SHOW*, the name of the second store had included a synonym of *department*, such as "agency," "bureau," "division," "unit," this might have been a much closer case. Instead, by selecting SHOW, Shoe Show included a synonym for, e.g., "exhibition," "display," "expo," and "presentation," but not for "department."

---

[12] *Id.*

[13] ROGET II: THE NEW THESAURUS (3d ed. 1995).

[14] *Id.*

10

No. 10-20587

If anything, the definitions of those determinative words imply two *functionally* different types of establishments.  The retail shoe store dubbed "The SHOE DEPT." inside Almeda's shopping mall could well be thought of by the average shopper as that mall's footwear department, division, specialty, or the like.  By contrast, the space occupied by SHOE SHOW in the nearby commercial center is not located inside a mall and has the appearance to the general public of a free-standing commercial space.  More to the point, the word "show" conveys a connotation different from "department.   When, as here, "SHOW" (1) designates an exterior space or premises in a commercial center and (2) is modified by an adjective (shoe)  to identify the kind of "show" being conducted in that space, a reasonable inference is that it is a place in which to view and inspect shoes, boots, sandals, and the like, but not necessarily a place in which to purchase footwear.

The Sixth Circuit, in a trademark infringement case, noted that "[w]hen analyzing similarity, courts should examine the pronunciation, appearance, and verbal translation of conflicting marks."[15]  Although this is not a  trademark case, the differences in pronunciation, appearance, and verbal translation between SHOW and The . . . DEPT. strengthen our conclusion that these two terms are not substantially similar within the context of the trade name provision of the Lease.

First, the operative words do not sound alike.  SHOW plays off the alliteration with shoe; DEPT. is the abbreviation of "department" and translates as such in the mind of the beholder, playing out in three syllables to SHOW's one.  Second, the *structure* of the two store names are different.  SHOE SHOW comprises two unabbreviated words, neither of which is modified by an article; The SHOE DEPT. comprises three words, one being the article, "The," and the

---

[15] *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 283 (6th Cir. 1997) (citing *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988)).

third being an abbreviation. As used in these two store names, SHOW and DEPT. are about as different in pronunciation and appearance as is conceivable.

We perceive as highly unlikely any potentiality for confusion about proprietor identity being engendered by the use of SHOW and DEPT., respectively, in the names of these two retail footwear establishments. Examined in a vacuum, the two words have very different meanings, as illustrated by ROGET'S lists of their mutually exclusive synonyms. And, when the words are examined in context, modified as they are by SHOE, the generic adjective that they have in common, SHOW and DEPT. imply two different types of footwear facilities or operations. Separate and apart from their respective meanings, the two words differ in pronunciation, appearance, and verbal translation.

In sum, we are convinced that, because (1) "shoe" is a generic or descriptive term and is common to the overwhelming majority of establishments that have anything at all to do with footwear, and (2) the non-generic terms SHOW and DEPT. have virtually nothing in common, SHOE SHOW, (the name of the store in the nearby commercial center), is not substantially similar to The SHOE DEPT. (the name of Shoe Show's store in Almeda's mall) – at least not for purposes of the trade name provision of the Lease. This is even more apparent when these trade names are viewed in the perspective of the way that the trade name provision of the Lease evolved through substantial negotiations by experienced and sophisticated commercial leasing parties, and the fact that the presence of a SHOE SHOW in the nearby commercial center never elicited protest by either San Mall or Almeda until Shoe Show gave notice that it was terminating the Lease.

No. 10-20587

## IV.  CONCLUSION

The Lease's trade name provision is unambiguous.  It prohibits Shoe Show from conducting a proximate operation – any operation, not just a shoe store – under the name The SHOE DEPT. or any other name that is substantially similar to The SHOE DEPT.  This lease provision is pregnant with the negative – *the absence of* – (1) an express prohibition of Shoe Show's operation of one or more *shoe* stores within the proscribed radius of Almeda's shopping mall and (2) an express prohibition of Shoe Show's using either of its other two widely used trade names, SHOE SHOW and BURLINGTON SHOES.   If Almeda's predecessor expected to be able to block Shoe Show's use of either or both of those trade names, it should have included them expressly in the Lease's list of forbidden trade names, just  as it did with The SHOE DEPT.  To sign a lease containing that omission and thereafter come into court with a collateral attack on the use of one of those two known trade names based on nothing more than the amorphous ban on "substantially similar" trade names should not and will not be countenanced – especially when (1) the generic word, shoe, is universally descriptive of the non-barred act of operating a retail footwear store, *and* (2) SHOW is not substantially similar to The . . . DEPT.  Interestingly, Almeda has not pointed to any example of a retail store that, in its trade name, employs the word "show" modified by a generic word that references the kind of merchandise being sold, much less the identity of the merchant doing the selling:  No "Grocery Show," no "Sporting Goods Show" no "Appliance Show," and so on *ad infinitum*.

When viewed in the context of the entire Lease and all of the relevant facts of this case, SHOE SHOW is just not substantially similar to The SHOE DEPT. Accordingly, Shoe Show did not violate the Lease when it opened a second store under the name SHOE SHOW within two miles of Almeda's mall.  Absent such a violation, Shoe Show's use of SHOE SHOW did not constitute a default by the

13

No. 10-20587

Lessee under the Lease and thus did not prohibit Shoe Show from exercising its option to terminate the Lease as of the end of its fifth year. We therefore reverse the district court's summary judgment and remand for further proceedings consistent herewith.

REVERSED and REMANDED.

No. 10-20587

CARL E. STEWART, Circuit Judge, dissenting:

The only issue presented is whether the trade names "The SHOE DEPT." and "SHOE SHOW" are substantially similar within the context of the parties' lease agreement. The district court's well-reasoned memorandum opinion and order concluded that "SHOE SHOW" and "The SHOE DEPT." are substantially similar trade names within the meaning of the lease agreement, and therefore that Shoe Show breached its contract with Almeda Mall when it abandoned its store in the Almeda Mall and ceased paying rent prior to the end of the lease term.

The district court concluded, and all parties agree, that the phrase "substantially similar trade name" is unambiguous. The dispute turns on the differing viewpoints employed to parse the language. For essentially the reasons given by the district court, I would affirm the summary judgment. Accordingly, I dissent from the majority opinion.